```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND


GUY R. METTLE, SR.              :
                                :
v.                              :   Civil No. WMN-05-1285
                                :
CSX TRANSPORTATION, INC.        :
                                :
```

**MEMORANDUM**

Before the Court is a motion for summary judgment filed by Defendant CSX Transportation, Inc. (CSXT). Paper No. 14. The motion is ripe for decision. Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be granted.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, Guy Mettle, Sr., was employed in CSXT's signal department for 36 years. On December 23, 2004, Plaintiff was working as a signal maintainer covering territory in Maryland that ran from Elkton to White Marsh. Mettle Dep. 20-21. As a signal maintainer, Plaintiff was responsible for inspecting, troubleshooting, and repairing the railroad signal system. Id. at 10-12. On this date, the CSXT dispatcher called Plaintiff to report a signal problem at the Harberson Walker Signal location. Id. at 22. The problem was a "track pumping issue," meaning that the signals gave a false indication that a train was occupying the track. Id. at 29-31. The weather that day, according to Plaintiff, was "off and on rain, downpours, overcast." Id. at

26. At around 11:00 a.m., Plaintiff went to the location and determined that a group of rail slivers was shorting the track. Id. at 33; Opp'n Ex. A.  Rail slivers are pieces of the cap of the rail that are shaved off due to the friction created by the wheels of the train.  Mettle Dep. 33-34.  The slivers are of varying sizes and widths.  Id.  Plaintiff successfully removed the problematic slivers.  Id. at 49, 53.

Plaintiff next tested the track to ascertain whether he had adequately dealt with the problem.  Plaintiff squatted down, balancing his weight on the balls of his feet, and leaned forward to take a track reading with a volt meter.  Id. 51-53.  Plaintiff contends that upon doing so his right foot slipped off of the railroad tie; the tie is the wooden crosspiece.  Id. at 45-50. In order to regain his balance and prevent himself from falling off the tie, Plaintiff "twisted" his body and, in so doing, he injured his back.  Id.  Upon completion of his reading, Plaintiff worked the remainder of his shift which ended at 3:00 p.m., and then sought medical attention for his injury a few days later. Id. at 61-68.

On April 21, 2005, Plaintiff filed suit in the United States District Court for the Eastern District of Pennsylvania against Defendant alleging violations of the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq.  On May 12, 2005, the case was transferred to this Court.

## II.  LEGAL STANDARD

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact.  Id. at 323.  The non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial.  Celotex, 477 U.S. at 324.  Unsupported speculation is insufficient to defeat a motion for summary judgment.  Felty, 818 F.2d at 1128 (citing Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986)).  Furthermore, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine

issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material."  Id.

## III. DISCUSSION

An employer can be liable under the FELA if its negligence "played any part, even the slightest, in producing the injury or death for which damages are sought."  See Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506 (1957).  The plaintiff "has the burden of proving some act of negligence by the railroad."  Hurley v. Patapsco & B.R. R.R., 888 F.2d 327, 329 (4th Cir. 1989).  The plaintiff must introduce evidence beyond his own conclusory assertions of his employer's negligence; he must present specific facts that would allow a jury to reach a verdict that is based on more than mere speculation.  Id.  The fact that Plaintiff was injured at work does not automatically make the railroad negligent.  FELA is not a strict liability standard.  See Doty v. Illinois Cent. R.R., 162 F.3d 460, 463 (7th Cir. 1998).

The Fourth Circuit applied the above standard in Hurley.  In that case, the plaintiff, Michael Hurley, was injured when operating a Reed-Prentice lathe.  Id.  Hurley argued that his employer was negligent in providing inadequate lighting for the area in which he operated the lathe.  Id.  The only evidence

4

Hurley presented in support of this argument was his own testimony and three photographs taken in the repair shop.  Id. The court found that "even if the amount of light [had been] discernable from the photographs, [Hurley] presented no evidence that the light was inadequate for safe operation of the lathe" and his own "conclusory assertions that the lighting was inadequate [we]re not sufficient."  Id.  The court concluded that, "[a]bsent speculation, no act or omission of appellee can be said to have played any role in causing the plaintiff's injuries."  Id. at 330.

In the present case, Plaintiff makes nothing more than conclusory assertions as to Defendant's alleged negligence. Plaintiff argues that Defendant caused his accident by permitting rail slivers and mud to accumulate between the rails.  Mettle Dep. 27, 34-35, 45-46, 103-04.  In Plaintiff's estimation, there were thirty to fifty rail slivers that had accumulated over a two to three month time period at the scene of his accident.  Id. at 27, 34-35.  Plaintiff argues that Defendant was negligent for allowing the slivers to accumulate, thereby increasing the risk that the slivers would cause a short in the signal system.  Opp'n 16.  Plaintiff reasons that if Defendant had properly inspected the track and removed the slivers the short would not have occurred on the day of his accident, he would not have been called to the scene, and would not have suffered the injury to

his back.  Id.  Additionally, Plaintiff argues that Defendant was negligent in allowing mud to exist around the tracks.  Plaintiff contends that it is "not acceptable practice at all to have mud" around the railroad roadbed.  Mettle Dep. 103-04.  Plaintiff alleges that he slipped on account of the mud.  Id. at 45-46.

Plaintiff provides the Court with only his own opinion that Defendant was negligent in allowing slivers and mud to accumulate at the scene of his accident.[1]  As in Hurley, these allegations are insufficient to show that his employer's negligence played any part in his injury.  With respect to Defendant's alleged negligence in allowing slivers to accumulate, Plaintiff has only provided his estimation that an unacceptable amount of slivers were at the accident site.  Additionally, Plaintiff acknowledged

---

[1] Plaintiff has failed to provide the Court with specific evidence that makes a sufficient showing (i.e., more than a possibility) that a causal relationship existed between any omission by the railroad and his subsequent accident.  See Rogers, 352 U.S. at 508.  The Fourth Circuit has found a causal link where the railroad's failure to act departed from its own safety practices and resulted in the plaintiff's injuries.  For example, in Philips v. Chesapeake and Ohio Railroad Co., 475 F.2d 22 (4th Cir. 1973), the plaintiff was injured when working as a field brakeman.  Id. at 23.  He followed a supervisor's instructions to board a moving car and brake it, the brakes did not hold and plaintiff was injured.  Id.  The plaintiff had received only four days of training prior to the accident; he claimed that he had never been told that boarding a moving train was unsafe and a witness for the railroad testified that it was an unsafe practice.  Id.  The Fourth Circuit found that, based on the above facts, a jury could have found that the railroad had failed in its duty to train the plaintiff with respect to safety.  Id. at 25.  The present case is unlike Philips, as Plaintiff has failed to provide any specific facts that show Defendant acted contrary to its normal procedure or a standard procedure.

that it is difficult to see the slivers and that they could easily be missed by a traffic maintenance crew. Id. at 55. With respect to Plaintiff's allegations concerning the alleged mud accumulation, Plaintiff again has offered only his opinion that an unacceptable amount had accumulated in the area of his accident. Plaintiff has also cited to no rule or authority to support his assertion that any amount of mud around a railroad bed is unacceptable. Further, absent speculation, a jury could not conclude that Plaintiff slipped because of the mud and not because of the rain, which Plaintiff described as a "heavy downpour."

The parties in the present case focus their pleadings on whether a lack of care on the part of Plaintiff effectively eliminates any would-be negligence on the part of Defendant. A railroad is not negligent for failing to anticipate a lack of care on the part of an employee. Marcell v. SeaLand Serv., Inc., 883 F.2d 20, 23 (5th Cir. 1989). Had Defendant been negligent with respect to the accumulation of mud or slivers, there would still be no causal connection between the presence of either the mud or slivers and Plaintiff's misfortune of injuring his back. The court's conclusion in Hurley that Hurley's own negligence was the sole proximate cause of his injury mandates the conclusion in the present case. See, 888 F.2d at 330. That court found that Hurley's injuries from the lathe were caused solely by his own

7

actions of wearing a loose fitted sweater and leaning in too close to the lathe.  Id.  Similarly, in the present case, the evidence shows that to the extent anyone's negligence was responsible for the injury, it was solely that of Plaintiff.[2]

Plaintiff asserts that Defendant's argument that Plaintiff was the sole cause of his own injury is similar to the argument the Supreme Court rejected in Brown v. Western Railway of Alabama, 338 U.S. 294 (1949), which reversed the Georgia Court of Appeals' finding that the plaintiff was the sole cause of his injuries.  In Brown, an employee was injured while, in performing his duties, he stepped on a large clinker lying in the railroad yard.  Id. at 297.  The plaintiff argued that the railroad was negligent for allowing clinkers and other debris to collect in the yards and directing him to work under the unsafe conditions. Id.  The Supreme Court reasoned that the lower court erred in inferring from the pleadings that the plaintiff's own negligence was the sole proximate cause of his injuries.

The present case is distinguishable for two reasons.  First, it was undisputed that the plaintiff in Brown was injured when he stepped on a clinker, but in the present case a jury could only speculate as to the cause of Plaintiff's injury and whether it

---

[2] The Court recognizes that Plaintiff may not have been "negligent" in causing his own injury.  Plaintiff's injury might more accurately be described as resulting from happenstance and not the fault of any party.

resulted from an excess amount of mud.  Second, in Brown, the Supreme Court relied in part on the plaintiff's assertion that he was directed to work under the allegedly unsafe conditions.  In contrast, in the present case, although Plaintiff asserts that he felt obligated to perform the voltage test under the conditions that were present, Plaintiff has also stated that his employer would not have wanted him to do anything unsafe, that he had the freedom to stay in his truck if he believed the conditions outside were unsafe, he did not need anyone's approval to temporarily refrain from working, and on the day of the incident he thought it was safe to perform the track reading.  Mettle Dep. 44, 48, 56.  In addition, Plaintiff has offered no evidence to show that the conditions were unsafe.

In his Opposition, Plaintiff, for the first time, argues that he could not wait until the weather conditions were better to test the track and signal circuit.  Opp'n 18.  He reasons that rail slivers are more likely to produce a short in rainy conditions and thus, it was essential that he test the voltage in rainy conditions.  This argument does not contradict or alter his deposition statements concerning the discretion he had to wait to perform his duties had he thought the conditions were unsafe.  Plaintiff's own sense of obligation to do the test in the rainy conditions in order to obtain a more accurate reading does not change the fact that it was his choice to perform the test and

his employer is not responsible for his misfortune.

**IV.  CONCLUSION**

For these reasons, Defendant's motion for summary judgment will be granted.  A separate order consistent with this Memorandum will follow.

                                                  /s/

                              William M. Nickerson
                              Senior United States District Judge

Dated: May 18, 2006